# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS TAPIA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 16-cv-8388 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | ) ) ) | Judge Thomas M. Durkin |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Carlos Tapia brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security denying Tapia's claim for social security disability benefits based on his back pain. Tapia seeks an award of benefits, or in the alternative, remand to the Commissioner for rehearing. Tapia has filed a motion for summary judgment. Dkt. 14. For the following reasons, that motion is granted and the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion and order.

## Background

Tapia is a 59 year old individual who suffers from back pain stemming from a work injury in January 2010. R. 40.[1] Tapia also suffers from diabetes, hyperlipidemia, and glaucoma. Tapia worked at his previous employer, a warehouse, for 25 years loading trucks, filling orders, stock keeping, and recovering

---

[1] References to the Administrative Record (Dkt. 9) will be cited as R. #.

bins. R. 45. Following the injury, Tapia was placed on light duty for a temporary period, but was ultimately terminated with severance in March 2013 because his employer could not accommodate light duty for long periods of time. R. 48.

Dr. Pelagia E. Kouloumberis, a neurologist, noted that Tapia has significant back pain and gave him a permanent work restriction against standing for long periods. R. 309. In July 2013, Dr. Kimberly Middleton, a specialist in family medicine, diagnosed Tapia with lumbar spinal stenosis and noted his pain would likely preclude him from performing work that requires constant or repetitive standing, bending, twisting, pulling, and pushing. R. 318.

The administrative law judge ("ALJ") determined that Tapia has the residual functional capacity to perform light work with several restrictions against climbing and a handful of postural restrictions. Because the ALJ found that Tapia was capable of performing past relevant work as a warehouse checker, he found Tapia was not disabled as defined in the Social Security Act, 20 C.F.R. 404.1520(f). R. 29. On June 22, 2016, the Appeals Council denied Tapia's request for review of the ALJ's decision. On August 26, 2016, Tapia filed this action for judicial review requesting reversal of the ALJ's decision, or alternatively, a remand for rehearing pursuant to 42 U.S.C. § 405(g).

**Legal Standard**

Judicial review of a final decision of the Social Security Administration is generally deferential. The Social Security Act requires the court to sustain the administrative law judge's findings if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court should review the entire administrative record, but must "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the [ALJ]." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "However, this does not mean that [the court] will simply rubber-stamp the [ALJ's] decision without a critical review of the evidence." *Id.* A decision may be reversed if the ALJ's findings "are not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Id.* In addition, the court will reverse if the ALJ does not "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

"Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). Additionally, the ALJ "has a duty to fully develop the record before drawing any conclusions," *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007), and deference in review is "lessened . . . where the ALJ's findings rest on an error of fact or logic." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). In oft-quoted words, the Seventh Circuit has said that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. When the ALJ has

3

satisfied these requirements, the responsibility for deciding whether the claimant is disabled falls on the Social Security Administration, and, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the ALJ's decision must be affirmed. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

**Discussion**

The Social Security Act, 42 U.S.C. §§ 423 and 1382c, provides that an individual is under a disability if he or she is unable to engage in substantial gainful activity due to any physical and/or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months or which can be expected to result in death. To determine whether an individual is disabled, an ALJ must follow the five-step analysis provided by 20 C.F.R. § 404.1520(a)(4). At step one, if the ALJ determines that the claimant is "doing substantial gainful activity," then the claimant is not disabled and no further analysis is necessary. If the claimant is not engaged in gainful activity, at step two, the ALJ must determine whether the claimant has a "severe" impairment or combination of impairments. If the ALJ finds that the claimant has such a severe impairment, and the impairment is one provided for in the Social Security regulation listings, then at step three, the ALJ must find that the claimant is disabled. If the ALJ finds that the impairment is not in the listings, then at step four, the ALJ must assess the "residual functional capacity" ("RFC") the claimant continues to possess despite the claimant's impairment. If the claimant's RFC enables the claimant to continue his or her "past relevant work," then the ALJ must

4

find that the claimant is not disabled. But if the claimant cannot perform past relevant work, at step five, the ALJ must determine whether the claimant "can make an adjustment to other work." If the claimant cannot make such an adjustment, then the claimant is disabled.

Here, the ALJ determined that Tapia had not engaged in substantial gainful activity since March 6, 2013, and that he had severe lumbar spine impairments. Although the ALJ found that Tapia has severe impairments, he noted that they did not meet the criteria for a "disabled" finding at step three. The ALJ then moved on to assess Tapia's RFC. The ALJ determined that Tapia could perform light work, as defined in 20 CFR 404.1567(b), which requires some lifting up to 20 pounds, but could not climb ladders, ropes, or scaffolds, and could only occasionally climb ramps and stairs. The ALJ also found that Tapia could occasionally balance, stoop, crouch, kneel, and crawl. The ALJ did not include any additional weight lifting restrictions (beyond the 20 pound limitation set by the regulation), and he did not include any restriction against standing for extended periods without rest periods. R. 24. Because of the RFC determination, the ALJ found that Tapia could perform his past relevant work as a warehouse checker. As a result, Tapia was not disabled.

Tapia does not challenge the ALJ's decision at steps one, two, or three. Rather, Tapia argues that the ALJ erred in determining Tapia's RFC by (1) failing to defer to the opinions of his treating physician; (2) failing to properly weigh Tapia's credibility; (3) failing to consider all of Tapia's impairments, in combination, in determining RFC; and (4) improperly analyzing the vocational assessment. Tapia

5

argues the ALJ should have limited him to sedentary work, rather than light work, because he could not lift more than 15 pounds, and could stand only for an hour at a time before needing to sit down.

## A. Treating Physicians

### 1. Dr. Pelagia Kouloumberis

Tapia first argues that the ALJ erred when he rejected the opinion of Dr. Pelagia Kouloumberis, Tapia's treating physician, without explanation. "A treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 CFR § 404.1527(d)(2)). If an ALJ declines to give controlling weight to the claimant's treating physician, he must offer "good reasons" for doing so. *See id*.

Here, Dr. Kouloumberis concluded that Tapia was permanently limited to work in a seated position, consistent with a sedentary RFC. The ALJ stated that he gave the opinion little weight because Dr. Kouloumberis had not treated Tapia after March 6, 2013 and the records after that time did not support her conclusion. R. 27. Specifically, the ALJ noted that the injections prescribed by Dr. Kouloumberis reduced Tapia's symptoms and that Tapia's pain improved by more than fifty percent with the treatment he received through the Pain Center. The ALJ also noted that Tapia's exam with Dr. Pinto in November 2013 showed no abnormalities. *Id*. Accordingly, the ALJ found that Tapia's records from his treatment after his last

6

visit with Dr. Kouloumberis in March 2013 do not support her conclusion that Tapia is permanently limited to seated work. *Id*.

In his determination that Dr. Kouloumberis's opinion was inconsistent with the record, however, the ALJ failed to consider all relevant evidence. Instead, the ALJ improperly relied only on the evidence that favored his conclusion. *See Clifford*, 227 F.3d at 871 (an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion" and must consider all relevant evidence to determine whether a treating physician's findings are entitled to controlling weight).

For example, the ALJ stated that the injections and medical branch blocks Tapia received after Dr. Kouloumberis's opinion reduced his symptoms. Tapia did receive treatment from the Pain Center in June and September 2013, both of which resulted in improvement. During the September 2013 visit, Tapia was told to return in three months for a follow up visit. However, a month later in October 2013, he returned with increased pain, numbness, and tingling in his hands and fingers with tenderness bilaterally in his lower back. R. 330, 331. This is inconsistent with the ALJ's conclusion that Tapia's exam was "unchanged" in October 2013. R. 27. The ALJ made no mention of the increased pain in October 2013 in his analysis of Dr. Kouloumberis's opinion. Nor did the ALJ acknowledge the waxing and waning of Tapia's symptoms with time and activity. *See* R. 309, 310, 337, 419, 421 (noting constant setbacks in pain since 2010 when Tapia was working). Since Tapia's injury in 2010, Tapia had received injections, but they were not effective in mitigating his pain for long periods of time. *See* R. 408 (noting pain despite an injection two days

7

prior in 2010). Several times throughout his treatment, Dr. Kouloumberis recommended restrictions on standing and lifting at work to prevent increases in Tapia's pain, and noted that Tapia's symptoms returned and increased when he returned to work. *See* R. 309 ("He does complain of significant low back pain with long standing or with walking for long periods of time that extends down into the posterior aspect of both thighs."); R. 418 ("However, since that time he has started working again in his old job where he is required to stand and do heavy lifting and again has developed similar symptoms. He states that after standing for a few hours, he has severe back pain, which causes him to have to sit down."). She even recommended and scheduled surgery, but Tapia opted to postpone it, noting his symptoms improved to a tolerable level when he was not working. R. 309. Moreover, even if Tapia's medical condition improved, he could still be incapable of performing light work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."). The record indicates that Tapia's pain improved precisely because he was not working. The ALJ improperly relied on these improvements without taking into account the demonstrated setbacks with work activity. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("Our cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence.").

The ALJ also noted that Tapia's musculoskeletal exams in late 2013 by the Pain Center and Dr. Pinto showed no abnormalities. But that too does not contradict Dr. Kouloumberis's opinion. Dr. Kouloumberis took an MRI of Tapia in February of 2013, which found severe central canal stenosis as well as other degenerative changes. R. 308. There is no indication that the exams conducted at the Pain Center or in Dr. Pinto's office were MRIs or involved any sort of imaging to contradict Dr. Kouloumberis's neurological opinion. They instead appear to be purely physical exams. Further, the ALJ noted that Tapia's musculoskeletal exam with Dr. Pinto "showed no abnormalities" but ignores that Tapia did not even present to Dr. Pinto for back pain—he presented for management of diabetes, lab testing, cholesterol, and knee pain. R. 349-357. There is no indication Dr. Pinto discussed back pain with Tapia. *Id*. Indeed, Tapia testified that he did not mention his back pain to Dr. Pinto because he "had a doctor that was in charge of that kind of situation." R. 52-53.

At the very least, the evidence indicates Dr. Kouloumberis's opinion was not contradicted by the record, indicating her opinion was entitled to controlling weight. Even if an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinion in determining what weight to give the opinion. 20 C.F.R. § 404.1527(c)(2)-(5); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Additional factors support

9

giving more weight to Dr. Kouloumberis's opinion—she had treated Tapia several times a year since April 2010 for back pain; she is a neurologist who based her finding on an MRI; and her opinion is consistent with the evidence in the record, as described above. Although the ALJ analyzed some of these factors in his analysis, he improperly focused only on the evidence that favored his conclusion. This was error.

### 2. Dr. Kimberly Middleton

The ALJ committed similar errors in determining what weight to give Dr. Middleton's opinion, a non-treating physician, pursuant to 20 C.F.R. § 404.1527(c). Dr. Middleton examined Tapia, reviewed his MRI, and opined that his stenosis would likely preclude him from work that required repetitive or constant standing, bending, twisting, pushing or pulling. The ALJ gave her opinion little weight, stating that her opinion was inconsistent with her own exam because Tapia had a normal gait and no difficulty getting off the exam table. The ALJ also noted that Tapia had significant improvement and no abnormalities in the latter part of 2013, and Tapia was not treated for back pain in 2014.

The ALJ's opinion misconstrues the evidence. First, a normal gait "is not informative as to whether [a claimant] could perform light work." *Murphy*, 759 F.3d at 819. The ALJ failed to explain why his observation of a "normal gait" is a basis to disregard a physician's opinion based on an examination. Further, as described above, Tapia's improvement in 2013 was short-lived—his pain returned in October 2013, consistent with the waxing and waning nature of his chronic pain. Finally,

10

although the records do indicate that Tapia did not seek treatment in 2014, the ALJ ignored Tapia's testimony that the costly injections were no longer providing relief—Tapia testified that he stopped receiving pain injections because they "were not doing what they're supposed to be doing anymore, because the pain would come back within two weeks. So, they were not really helping that much," and their high cost of $600 per injection. R. 51. Thus, the record does not serve to contradict Dr. Middleton's opinion.

### 3. State agency medical consultants

While discounting both Dr. Kouloumberis and Dr. Middleton's opinions, the ALJ gave more weight to the two state agency medical consultants, Dr. B. Rock Oh and Dr. Richard Bilinsky, allegedly because they reviewed additional records before forming their opinions. R. 28. But Dr. Oh completed an assessment on July 18, 2013, two weeks after Dr. Middleton's exam on July 5, 2013, and just a couple of months after Dr. Kouloumberis's opinion. The ALJ does not indicate what records Dr. Oh reviewed in the two weeks between Dr. Middleton's exam and his assessment. Dr. Bilinsky then affirmed Dr. Oh's assessment in January 2014. If he reviewed additional records, the only records he could have reviewed are the Pain Center records, which as described above, noted an *increase* in pain in October 2013; and Dr. Pinto's November 2013 visit, during which Tapia presented for other ailments, not back pain. As Dr. Oh and Dr. Bilinsky's opinions appear to be contradicted by the record, it was error for the ALJ to give them determinative weight, especially since they never examined Tapia. *See* 20 C.F.R. § 404.1527(c)(1),

11

(an ALJ should "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]."). *See also Scrogham*, 765 F.3d at 696.

The ALJ failed to adequately address material evidence contrary to his weight of the physicians' opinions. Accordingly, the ALJ's decision is remanded for reconsideration of the doctors' opinions in accordance with this opinion.

**B. Credibility of the Claimant**

Tapia next argues that the ALJ's finding that Tapia's testimony was "less than fully credible" is not supported by the record. An ALJ is entitled to determine whether a witness's testimony is credible. *See Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ is given a great amount of deference in his credibility findings. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, when the ALJ's determination is "patently wrong . . . unreasonable or unsupported," it may be overturned. *Id*. A court should "uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss*, 555 F.3d at 561.

The ALJ concluded that Tapia's testimony about the severity of his pain was contradicted by evidence that injections and branch blocks improved Tapia's pain and physical exams that showed no abnormalities in the musculoskeletal system. As detailed above, those findings ignore Tapia's increased pain in October 2013 (a month after the ALJ noted Tapia was "doing great"), the history of waxing and waning pain throughout the record, and the lack of any imaging that contradicted

the February 2013 MRI's finding of severe stenosis. That Tapia had periods of decreased pain does not lend itself to a finding that Tapia's reports of pain are dishonest—an individual with a chronic disease, who undergoes continuous treatment, is likely to have better days and worse days. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (noting that even if a claimant was well enough to work half of the time, she could still not hold down a full-time job).

The ALJ also discounted Tapia's testimony because he only received pain management services for a few months, was never referred to physical therapy, and stopped receiving treatment in the latter part of 2013 and 2014. Tapia had presented to Dr. Kouloumberis for back pain since April 2010. R. 393-425. Dr. Kouloumberis prescribed injections and medications, and at one point, recommended surgery, all indicating Tapia's back pain was severe. Tapia also testified that he stopped receiving pain injections because they were no longer helping and due to their high cost. R. 51. Ineffectiveness and affordability of treatment are both reasonable explanations for stopping medical treatment in a credibility analysis. See *Murphy*, 759 F.3d at 816. The ALJ's findings are not supported by substantial evidence.

Further, the Seventh Circuit has noted that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Tapia worked essentially the same job with the same employer for 25 years. R. 41. The ALJ only noted that Tapia "has a consistent work history" before launching into

13

minor inconsistencies made by Tapia regarding a discrepancy as to his level of education, the side effect of one medication, and testimony about whether he was supposed to follow up with Dr. Kouloumberis. Although a consistent work history is not dispositive, it is less likely that a person with a long and consistent work record would malinger to avoid work (and a presumably higher wage) if in fact he could work. The ALJ's reasons for Tapia's adverse credibility ruling find little support on close examination, and for that reason, the credibility determination is also reversed and remanded for an analysis consistent with the record evidence and the credibility presumption.

### C. Limiting Effects of Other Impairments

Tapia next argues the ALJ erred by failing to account for Tapia's diabetes, hyperlipidemia, and glaucoma in his RFC analysis. An ALJ must consider all impairments, severe and non-severe, in determining a person's RFC. 20 CFR 404.1545(a). While no single impairment might significantly limit an individual's ability to work, the combination of impairments could impose greater restrictions. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). The Court finds the ALJ did not err as to this issue. The ALJ noted that these ailments did not cause more than minimal functional limitations. R. 23-24. The record likewise indicates these conditions were well managed with medication and Tapia did not report any limitations related to those impairments to affect his RFC.

**D. Vocational Assessment**

Finally, Tapia challenges the ALJ's final RFC determination. It is unnecessary to discuss this analysis in great detail because the ALJ must reassess Tapia's RFC in light of the doctors' opinions and Tapia's complaints of pain that the ALJ previously discounted. However, the Court notes the following errors on the ALJ's RFC determination which should be corrected on remand.

The ALJ determined that Tapia has the RFC to perform light work as defined in 20 CFR 404.1567(b), with some limitations as to climbing, balancing, stooping, crouching, kneeling, and crawling as well as limitations as to heights. Light work is defined as lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately six hours of an eight-hour workday" with intermittent sitting or "involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id*.

After examining the record, the ALJ's RFC determination is not fully supported. Tapia said he could stand for up to an hour before needing to rest for 10 to 15 minutes. R. 49. Tapia also testified that with longer periods of standing, he would need to sit for greater amounts of time. R. 55. There is no medical evidence in the record to contradict his claim. Indeed, Dr. Kouloumberis noted that Tapia's pain

15

stemmed primarily from standing or walking for long periods of time. R. 309, 310. There is also some indication in the medical record that Tapia could not lift more than 15 pounds without back pain. R. 311, 312, 316. This evidence suggests Tapia does not have the ability to do substantially all of the activities of light work.

The Court is also concerned that the ALJ inaccurately described Tapia's past relevant work. The Seventh Circuit has held that an ALJ must consider the specific jobs held by a claimant and the tasks required of that job in determining whether a claimant could perform past work. *Cohen v. Astrue*, 258 F. App'x 20, 28 (7th Cir. 2007). The vocational expert here noted that an individual with a weight lifting restriction of 20 pounds could perform work as a warehouse checker "as per [the Dictionary of Occupational Titles], but not as performed" by Tapia because his previous work actually required a medium level of exertion. R. 60. Indeed, Tapia testified that as a bin checker, he lifted 50 pounds up to half of the day. R. 54. Even if Tapia was able to lift the 20 pounds required of a light duty RFC (of which there is doubt), the evidence in the record shows that a "warehouse checker" job in fact requires exertion well beyond that of a light work job. R. 44 ("I looked for all warehouse positions available out in the field, and I had a couple companies call me back interested in my services, but once I let them know what my disability was, they were not interested in my services."). The vocational expert also testified that if an individual had no lifting restrictions but needed to sit for 10 to 15 minutes with every hour of standing—consistent with Tapia's limitations—all past work would be eliminated. R. 61.

Accordingly, the ALJ's RFC determination should also be reexamined in accordance with this opinion.

**CONCLUSION**

For these reasons, Plaintiff Carlos Tapia's Motion for Summary Judgment, Dkt. 14, is granted and the case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED:

Dated: May 14, 2018

*Thomas M Durkin*

\------------------------------------------
Honorable Thomas M. Durkin
United States District Judge